UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK HAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PFIZER INC., et al.,<br><br>　　　　　Defendants. | Case No. 23-cv-03908-AMO<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 80 |

This is an alleged whistleblower retaliation case. Before the Court is Defendant Pfizer, Inc.'s motion for summary judgment. Having read the parties' papers and carefully considered their arguments therein, as well as the relevant legal authority, and good cause appearing, the Court **GRANTS** the motion, for the following reasons.

## BACKGROUND

The following summary of relevant facts is undisputed.

Pfizer, Inc. ("Pfizer") is a biopharmaceutical company engaged in the discovery, development, manufacture, and sale of medicines and vaccines. Dkt. No. 80 at 8. Plaintiff Frank Han was employed with Pfizer as the Director of Global Analytics on the Compliance Analytics team under Team Lead, Tara Palesh. Dkt. No. 81, Deposition of Frank Han ("Han Dep.") 13:3-6, 13:20-14:5. The Compliance Analytics team is part of the Compliance division which helps Pfizer comply with United States laws, and laws in other countries in which it operates. *See* Dkt. No. 80 at 8; Han Dep. 39:20-40:5, 45:24-46:15. The Compliance Analytics team monitors, investigates, and corrects non-compliance by Pfizer employees or providers, and helps build and improve the digital tools other Compliance division colleagues use to monitor for compliance with policies, identify risk, and investigate potential violations. Han. Dep. 14:6-13, 39:20-40:5, 45:24-46:15;

Dkt. No. 84, Deposition of Jeffrey Scott ("Scott Dep.") 40:2-43:6.

As part of his job, Han developed dashboard tools used by the Compliance division. Han Dep. 47:9-17. He also helped Pfizer observe the My Anti-Corruption Policy and Procedures ("MAPP"), which ensures Pfizer employees comply with the Foreign Corrupt Practices Act and other anti-bribery laws. Han Dep. 17:17-18:25; 49:6-9. MAPP requires approval when anything of value is offered or provided to any government official who could potentially impact Pfizer business. Han Dep. 49:10-17, 51:15-20. Pfizer internally classifies these individuals as "potentially influential government officials" ("PIGOs"). Han Dep. 47:18-48:13, 49:18-50:5; Dkt. No. 82, Deposition of Tara Palesh (Palesh Dep.) 126:17-128:8.

Palesh, as Han's manager, reviewed Han's performance twice a year. *See* Dkt. No. 81 at 144-145. In 2019, Palesh noted in Han's year-end performance review that Han was "very motivated" and that his "positive attitude and love of learning is a great addition to the team." *Id.* at 144. Palesh also noted under "areas for improvement" that Han "should continue to develop his presentation and communication capabilities to bridge the complexity with what he does to the audience it is for. [Han] should also keep focus on project objectives to ensure we are answering the key business questions." *Id.* In his June 2020 "Semester One" performance review, Palesh noted Han "should improve on keeping focus on the main business objective and identifying the simplest way to accomplish the goal. In the field there are many requests that need to be fully thought through and distilled into what is realistically helpful. Otherwise it is easy to spend a great deal of time trying to deliver something that is unnecessary and not ultimately what is needed. [Han] should actively seek help from the team in areas he is developing." Dkt. No. 81 at 149. Palesh gave Han similar feedback in his December 2020 "Semester Two" performance review. Dkt. No. 81 at 151; Han. Dep. 89:7-12; Palesh Dep. 99:14-100:1.

Beginning in 2020, Palesh began to criticize Han's work "a lot." Han Dep. 53:8-22. These criticisms included Han's need to stay focused on objectives and tasks, *id.* at 53:23-25, his ability to communicate practical information to the team, *id.* at 54:1-8, and his ability to achieve his goals and deliver a usable product to the end user, *id.* at 54:11-21. Han testified that from March 2020 to the end of his employment, Palesh criticized his work "[p]retty much every week."

United States District Court
Northern District of California

*Id.* at 54:1-54:7.  In Han's June 2021 performance review, Palesh continued to point out that while Han's "exploratory work" was great, he needed to "pivot his attention to tangible deliverables to show he can also deliver outputs that are able to be used by the division."  Dkt. No. 81 at 156.

In the summer of 2021, Palesh asked Han to choose an existing compliance dashboard and identify a way to improve it.  Palesh Dep. 126:1-16; Han Dep. 110:11-16.  Han identified a dashboard which was used by Compliance to review PIGO spend data, and he developed an algorithm which he believed would improve it.  Palesh Dep. 126:1-127:9; Han Dep. 110:20-22.  His objective was to identify outliers which could be indicative of an issue for Compliance to review.  Han Dep. at 123:18-124:3.  On November 4, 2021, Han sent a 15-page PowerPoint to Palesh and two other colleagues that contained a list of PIGO spend outliers (the "November 2021 PowerPoint").  Han Dep. 60:23-61:4, 108:20-109:7.  Han identified outliers in China and other countries which "shocked" him because the outliers were "huge."  Dkt. No. 81 at 162-176; Han Dep. 112:7-10.  He also identified instances where multiple business units within Pfizer spent money on the same PIGO.  *Id.*  When Han presented this PowerPoint to Palesh and his colleagues, he explained the outliers he believed his algorithm detected and his proposed analytics to improve the dashboard.  Han Dep. 31:10-18; Palesh Depo 135:1-5.  Han told Palesh and two colleagues in meetings about the PowerPoint that the outliers he discovered appeared very serious and raised substantial suspicions about fraud, bribery, and MAPP violations.  Han Dep. 114: 17-22; 128:11-14; Han Decl., ¶¶ 9-10.  No one in the meeting was critical of Han's work, expressed reservations about it or told him to stop working on it.  Han Dep. at 125:25-126:11, 127:14-16, 138:11-21.  Palesh encouraged Han to continue working on the project.  Han Dep. 125:3-24, 138:6-8; Palesh Depo 141:12-24.  Also in November 2021, a colleague emailed Han notifying him that Han was nominated for "the 2021 Compliance Division Rewards and Recognition Program" because the colleague "felt that [Han's] work was exceptional and represented the best of [the Compliance] division."  Dkt. No. 87-1 at 2.

At the end of 2021, Palesh again reviewed Han's performance.  Dkt. No. 81 at 158-160.  Palesh wrote that Han "continues to push himself on the computational side of work, but needs to translate his work into end products.  Ideas and calculations need to be pulled through (with [Han]

leading integration w/members of the team) into the work we deliver to the division.  Otherwise no value is realized." *Id.* at 160.  She also noted that "[w]hile scores have been developed for MAPP transactions and the process is implemented and published to various servers, the most important deliverable is to have the work accessed and used by users.  It has not been integrated into leapfrog, or any other dashboard or body of work." *Id.* at 158.

On March 30, 2022, Palesh sent Han an email which noted Han's performance deficiencies, including Han's "lack of response and communication to emails and calendar invites from members of the team and [his] late team meeting attendance[.]" *Id.* at 178.  Palesh stated that Han's behavior was "not in line with Pfizer values of Excellence" and provided "an additional reminder" that she expected Han to "remain focused on the goals we have set for the semester with tangible deliverables and collaborate effectively with [another coworker]." *Id.*  She noted that "[i]t is imperative that you improve . . . immediately and conduct yourself appropriately" and that "failure to achieve a satisfactory level of behavior will result in further performance management reviews." *Id.*  Han continued to receive negative performance reviews from Palesh. Dkt. No. 81 at 182-185.

On August 3, 2022, Palesh sent Han a notice of underperformance.  Dkt. No. 81 at 186-187.  The notice explained Han's deficiencies at work and stated that this was Han's final notice of underperformance – "as per Pfizer's Performance Improvement Process, failure to improve to an acceptable level will result in termination from Pfizer." *Id.* at 187.  On August 15, 2022, Palesh informed Han that she would not approve his request to participate in Pfizer's tuition reimbursement program because of his poor performance.  Dkt. No. 80-2, Declaration of Tara Palesh ("Palesh Dec.") ¶ 5.  After receiving the notice of underperformance and the denial of tuition reimbursement, on August 15, 2022, Han forwarded Palesh's email to upper management and disputed Palesh's notice of underperformance (the "August 2022 performance rebuttal").  Dkt. No. 81 at 188-192.  In the email, Han mentioned the unusual PIGO spend in China that he uncovered. *Id.* at 190.  He also stated that Palesh created an intimidating work environment, yelled at Han, prevented Han from working effectively, isolated him, and dismissed his achievements. *Id.* at 188-192.  Han asked upper management to "[c]onduct an independent and

impartial assessment of [his] performance review[.]" *Id.* at 191.

In response to Han's request, Pfizer investigated (1) Palesh's review of Han's performance, (2) the work environment under Palesh, and (3) Han's compliance concerns. Han. Dep. 200:18-24; Scott Dep. 106:8-107:15, 110:24-113:3, 139:8-22. During that investigation, four of Han's coworkers complained about his performance. Scott Dep. at 147:14-148:5, 154:17-19, 159:11-21; Dkt. No. 84 at 44, 54-58, 60, 61. Ultimately, Pfizer determined that (1) Palesh's review of Han's performance was fair, Scott Dep. 173:8-175:10, 177:7-180:7; Dkt. No. 84 at 85, (2) Han's allegations about Palesh's management could not be substantiated, Dkt. No. 83 at 46, and (3) no further review of Han's PIGO concerns was needed, Dkt. No. 83 at 46. In November 2022, Pfizer terminated Han. Scott Dep. 276:2-277:18.

Han filed this suit against Defendants Pfizer, Tara Palesh, Jeff Scott, and Eric Eichinger on April 25, 2023, in San Francisco Superior Court. Dkt. No. 1 at 2. On August 4, 2023, Defendants removed the case to federal court. Dkt. No. 1. On December 28, 2023, the Court granted Pfizer's motion to dismiss and allowed Han leave to amend his complaint. Dkt. No. 20. Han filed an amended complaint bringing eight causes of action. Dkt. No. 21. On January 31, 2025, the Court granted Pfizer's partial motion to dismiss without leave to amend. Dkt. No. 40. Han's remaining causes of action are: (1) whistleblower retaliation under California Labor Code section 1102.5, (2) violation of California Business and Professions Code sections 17200-17208, and (3) retaliation in violation of public policy pursuant to California Government Code section 12940. *See* Dkt. No. 41. On March 26, 2026, Pfizer filed a motion seeking summary judgment on all of Han's remaining claims. *See* Dkt. No. 80. On April 9, 2026, Han filed an opposition to Pfizer's motion for summary judgment. *See* Dkt. No. 85. Pfizer's reply followed on April 16, 2026. *See* Dkt. No. 96. On April 23, 2026, Han filed objections to evidence submitted in support of Pfizer's reply brief. *See* Dkt. No. 98.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material

United States District Court
Northern District of California

facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *See id.*

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *Marker v. U.S. Dep't of Educ.*, No. 23-CV-05873-JSC, 2026 WL 145845, at *3 (N.D. Cal. Jan. 20, 2026) (citing *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)).  Where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000).  When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial.  Fed. R. Civ. P. 56(c), (e).  "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."  *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

## DISCUSSION

### I.    Evidentiary Objections

The parties lodged many objections to evidence submitted in support of their summary judgment briefing.  *See* Dkt. No. 85 at 22-24, Dkt. No. 96 at 17-19, Dkt. No. 98 at 2-3.  The Court considers only those objections directed at evidence the Court found relevant to reaching its ruling.  All other objections are OVERRULED as moot.

Han objects to notes from Pfizer's investigation into Han's performance as hearsay.  *See* Dkt. No. 85 at 23.  However, the notes are not offered for the truth of the matter asserted; instead, they are offered for their effect on the listener, *see* Dkt. No. 96 at 18, and therefore the notes do not constitute hearsay, *see* Fed. R. Civ. P. 801(c).  Thus, the Court OVERRULES Han's objections to these materials.  Han additionally objects to the entirety of Palesh's declaration as it

United States District Court
Northern District of California

"is expressly premised on her 'review of and familiarity with Defendant's files and the documents as kept in the regular course of business,' yet her declaration fails to identify which, if any of Defendant's files, or which if any, of 'the documents' she reviewed or was familiar with, or how any of these materials supported her declaration." Dkt. No. 85 at 24.  The Court OVERRULES Han's objection, as Palesh's declaration is based on her own personal knowledge and not merely a review of the files.  *See, e.g.*, Dkt. No. 80-2 ¶ 7 ("I made the decision to terminate Han's employment following a history of poor performance that did not improve with counseling and progressive discipline.").

Finally, Pfizer objects to Han's declaration because it is unsigned.  Dkt. No. 96 at 19.  The Court SUSTAINS Pfizer's objection to Han's unsigned declaration.  However, Han, recognizing his mistake, filed a signed declaration four days after Pfizer objected to the unsigned version.  Dkt. No. 97.  Pfizer did not raise an objection to the signed declaration.  Because Pfizer failed to object to the later-filed declaration, and to ensure a just determination of this action, *see* Fed. R. Civ. P. 1, the Court relied on Han's signed declaration in reaching its ruling.

## II.    Motion for Summary Judgment

As an initial matter, the parties agree that all of Han's claims rise and fall with his Labor Code section 1102.5 claim.  *See* Dkt. No. 80 at 26; Dkt. No. 85 at 20.  Accordingly, the Court first considers Pfizer's arguments that it is entitled to summary judgment on Han's section 1102.5 claim.

California Labor Code section 1102.5 provides that "[a]n employer . . . shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency [or] to a person with authority over the employee . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."  To establish a *prima facie* case of whistleblower retaliation under Labor Code section 1102.5, Han must show that he engaged in protected activity under the statute by "disclosing information" that he reasonably believed violates the law to someone with authority over him.  *Lawson v. PPG Architectural Finishes, Inc.*,

United States District Court
Northern District of California

12 Cal. 5th 703, 718 (2022).  He must then show by a "preponderance of the evidence" that his protected whistleblowing was a "contributing factor" to an adverse employment action.  *Id.*  Even if Han makes this showing, Pfizer is not liable if it demonstrates by "clear and convincing evidence" that it would have taken the same action "for legitimate, independent reasons" if Han had not engaged in protected whistleblowing activities.  *Id.*

Pfizer argues that it is entitled to summary judgment on Han's section 1102.5 claim because (1) Han did not engage in protected activity, (2) even if Han's communications with Pfizer are considered whistleblowing, there is no evidence they motivated the termination decision, and (3) even if Han shows that the alleged whistleblowing motivated the termination decision, undisputed evidence proves that Pfizer would have made the same decision to terminate Han's employment for legitimate, non-retaliatory reasons.  The Court discusses each argument in turn.

### A.  Protected Activity Under Labor Code Section 1102.5

First, Pfizer contends that Han "never made a protected disclosure under Labor Code section 1102.5."  Dkt. No. 80 at 21.  Han identifies two protected disclosures: (1) the November 2021 PowerPoint and (2) the August 2022 performance rebuttal.  *See generally* Dkt. No. 85.  The Court analyzes each of Han's alleged protected disclosures in turn.

Pfizer argues that Han's November 2021 PowerPoint was not a disclosure of suspected unlawful conduct, but "a routine progress update on an assignment his manager . . . gave him[.]" *Id.*  Pfizer states that Han conceded this project was "no different from his other assignments, all of which were designed to support compliance in identifying risk."  *Id.* (citing Han. Dep 104:10-15).  But, as Pfizer acknowledges, *see* Dkt. No. 80 at 22, n. 3, section 1102.5 applies regardless of whether "disclosing the information is part of the employee's job duties."  Cal. Labor Code § 1102.5.  Accordingly, whether the November 2021 PowerPoint project was no different from Han's other assignments is irrelevant.

Pfizer cites only one case in support of its proposition that Han's November 2021 PowerPoint does not qualify as a protected disclosure.  Dkt. No. 80 at 21-22 (citing *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378 (2005), *disapproved of on other*

*grounds by Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703 (2022)).  In *Patten*, the court warned that elevating "exclusively internal personnel disclosures" to whistleblower status would improperly thrust courts into "micromanaging employment practices" and create "a legion of undeserving protected 'whistleblowers' arising from the routine workings and communications of the job site." 134 Cal. App. 4th at 1378.  But Pfizer provides no support for the contention that Han's PowerPoint was an internal personnel disclosure.  *Cf. id.* at 1382 (finding employee's conduct not protected where she reported (1) a male teacher was peering into the girls' lock room, (2) an off-color remark made by another teacher, and (3) that the school needed additional staff to keep the school campus safe).  Here, Han's November 2021 PowerPoint disclosed the possibility that Pfizer was improperly paying large sums of money to PIGOs in violation of the FCPA, not merely internal personnel concerns.  *See* Dkt. No. 81 at 162-176.  Accordingly, *Patten* does not support Pfizer's contention that the November 2021 PowerPoint is unprotected conduct, and Pfizer has failed to carry its burden of showing that the November 2021 PowerPoint is unprotected conduct.

The same is true for Han's second alleged whistleblowing incident, the August 2022 performance rebuttal.  While Han's rebuttal included personnel disputes related to his increasingly troubled relationship with Palesh, it also discussed Han's concerns related to Pfizer's PIGO spend outliers.  Dkt. No. 81 at 190 ("I discovered many abnormal MAPP Process Type combination patterns that were not detectable by our routine dashboarding.  In China, Pfizer's MAPP spending pattern tended to have very high percentages of "multiple BUs (>=3) spend on the same PIGO/PIGO Entity" when compared with other countries, [*sic*] This finding had created an instant alert.").  Han's email disclosed the possibility that Pfizer's spending was abnormal and worrisome, not only his personnel dispute.  *See* Dkt. No. 81 at 190.

Pfizer argues that Han's performance rebuttal does not constitute protected conduct because Han stated in his email that he "had no intention to be a whistle blower of any kind." Dkt. No. 80 at 22.  But Pfizer provides no support for the contention that whether Han intended to whistle blow is relevant to whether his conduct is protected under section 1102.5.  Dkt. No. 80 at 21-23.  As long as Han conveyed in his performance rebuttal that he reasonably believed Pfizer

was engaging in illegal conduct, his performance rebuttal constitutes protected conduct. *See Ross v. Cnty. of Riverside*, 36 Cal. App. 5th 580, 592 (2019) ("An employee engages in activity protected by the statute when the employee discloses reasonably based suspicions of illegal activity.") (citations and quotations omitted).  Han testified that the purpose of his August 2022 performance rebuttal was in part to "alert upper management of the suspected PIGO MAPP fraud [he] had disclosed to [his] team in November 2021[.]"  Declaration of Frank Han, Dkt. No. 87, ¶ 13 ("Han Decl.").  If credited by a trier of fact, Han's testimony and his email to upper management show that he reasonably believed Pfizer was committing fraud and potentially violating the FCPA.  *See* Palesh Dep. 128:2-8 (explaining that payments to PIGOs could potentially violate FCPA).  This is enough to establish that Han's performance rebuttal was protected conduct.  *See Ross*, 36 Cal. App. 5th at 592.

Thus, Pfizer has not shown it is entitled to summary judgment on the ground that Han's communications to Pfizer were unprotected disclosures.

### B. Contributing Factor to Termination

Pfizer also contends it is entitled to summary judgment because Han "simply cannot establish by a preponderance of the evidence that either allegedly protected communication contributed to the termination decision."  Dkt. No. 80 at 23.  Because Pfizer contends that Han does not have enough evidence to carry his burden of persuasion, Han must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial.  *See Nissan Fire*, 210 F.3d at 1105-06; Fed. R. Civ. P. 56(c), (e).

Han asserts that the timing of his termination is circumstantial evidence supporting that the alleged whistleblowing activities contributed to Pfizer's termination decision.  Dkt. No. 85 at 15.  "[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred."  *Passantino*, 212 F.3d at 507; *see also Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1181 (C.D. Cal. 2013) ("[T]he Ninth Circuit has held that gaps of one to three months between a plaintiff's protected activity and a defendant's adverse employment action can give rise to an inference of causation.").  Approximately two months passed between the second alleged whistleblowing incident and Han's

termination. Dkt. No. 85 at 16. This is "sufficient circumstantial evidence from which a trier of fact could conclude that there is a causal link" between Han's whistleblowing activities and his termination. *See Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 478 (1992) (holding that employee's termination "only a few months after" confrontation with manager when the employee had worked at the company for four years was "sufficient to withstand summary judgment"); *Rodriguez v. Lab'y Corp. of Am.*, 623 F. Supp. 3d 1047, 1057 (C.D. Cal. 2022); *Passantino*, 212 F.3d at 507 ("we have held that evidence based on timing can be sufficient to let the [causation] issue go to the jury, even in the face of alternative reasons proffered by the defendant."). Accordingly, Han has carried his burden of establishing that material factual disputes exist as to whether the alleged whistleblowing contributed to Pfizer's termination decision. Pfizer is not entitled to summary judgment on this ground.

### C. Legitimate, Independent Reasons for Termination

Finally, Pfizer contends that it is entitled to summary judgment on Han's section 1102.5 claim because Pfizer would have terminated Han even if he had not engaged in the alleged whistleblowing. Dkt. No. 80 at 21, 24 (citing *Lawson*, 12 Cal.5th at 718 (holding that employer is not liable under section 1102.5 if it demonstrates "by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity.")). Pfizer bears the burden of providing "evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Marker*, 2026 WL 145845, at *3.

The undisputed evidence in the record shows Palesh raised concerns about Han's performance years before his alleged whistleblowing activities. Indeed, prior to the November 2021 PowerPoint, Palesh noted in at least four performance reviews that Han needed to focus on project objectives to ensure he delivered usable work product. *See* Dkt. No. 81 at 144, 149, 151, 156. Han noted that Palesh criticized his work approximately weekly beginning in March 2020, and that she specifically noted his need to stay focused on objectives. Han Dep. 53:8-25. Indeed, before Han submitted his August 2022 performance rebuttal, Palesh was already working with Human Resources to prepare a notice of underperformance, which she delivered on August 3,

United States District Court
Northern District of California

2022, prior to Han's performance rebuttal. Dkt. No. 81 at 186-187. The notice emphasized the same performance issues which Palesh noted in Han's early reviews, namely Palesh's belief that Han struggled to achieve goals and collaborate effectively. *See id.* at 144, 149, 151, 156, 186-187. During Pfizer's investigation into Han's complaint that the notice of underperformance was unfair, three of Han's coworkers noted that he struggled to focus and create deliverables, Dkt. No. 84 at 44, 54-58, 61, and one noted that he was difficult to work and communicate with, *id.* at 60.

*Vatalaro v. County of Sacramento*, 79 Cal. App. 5th 367 (2022) is informative. The *Vatalaro* court granted summary judgment for an employer where the employer established that it would have terminated plaintiff for legitimate, independent reasons even if plaintiff had not engaged in protected activity. 79 Cal. App. 5th at 387-88. In *Vatalaro*, the employer argued that it terminated plaintiff because she was insubordinate, disrespectful, and dishonest. *Id.* at 384. The employer documented instances of these traits in a memorandum prior to plaintiff's termination. *Id.* Plaintiff attempted to justify her conduct but did not dispute that she had been dishonest. *Id.* at 385-86. The court ultimately concluded that, because plaintiff did not provide record evidence to support her contention that the reasons for her dismissal were incorrect, the employer carried its burden of establishing that it would have terminated plaintiff even if she had not engaged in protected activity. *Id.* at 387-88. The same is true here. Palesh and others documented the same performance deficiencies for Han for three years prior to his termination. *See, e.g.*, Dkt. No. 81 at 144, 149, 151, 156, 158-160, 178, 182-184, 186-187; Palesh Dep. 201:5-15. Han admits that he received consistent feedback that he failed to produce usable work product. Han Dep. 53:8-22; 54:1-54:21. As in *Vatalaro*, the undisputed evidence in the record shows that Pfizer would have terminated Han for legitimate, independent reasons even if he did not engage in the alleged whistleblowing because he received consistent criticism and warnings regarding his conduct for years prior to his termination. 79 Cal. App. 5th at 385-88.

Han's attempts to create a material dispute of fact fall short. First, Han argues "[Palesh] started a torrent of unfounded, false, misleading and overblown critiques of his performance, began falsely berating him and impeded his ability to perform his job. Han believed this was retaliation for having made his PIGO MAPP disclosures in November 2021 and that she was

12

attempting to force him out of the company as a result." Dkt. No. 85 at 8; Han Decl. ¶ 12. But a party may not manufacture a triable issue of fact by submitting a declaration or statement that contradicts earlier deposition testimony. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012); *Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Han testified during his deposition that Palesh criticized him almost weekly from March 2020 onwards for failing to meet objectives, Han Dep. 53:8-54:21, and that Palesh was not upset about the November 2021 PowerPoint, expressed no reservations about it, and encouraged him to keep working on it, *id.* at 125:3-126:11, 127:14-16, 138:11-21; *see also* Palesh Dep. 141:12-24. Han's later declaration states that he believed Palesh was retaliating against him for the November 2021 PowerPoint but this statement contradicts his deposition testimony, and the Court need not credit it. *Vatalaro*, 79 Cal. App. 5th at 381 ("[E]ven at the summary judgment stage, courts may give great weight to admissions made in discovery and disregard contradictory and self-serving affidavits of the party.") (citations and quotations omitted). Thus, this argument does not raise a triable question of fact as to whether Palesh would have terminated Han for legitimate reasons absent his alleged whistleblowing.

Though Han contends he "has presented substantial evidence that Palesh was impeding him from performing his job," Dkt. No. 85 at 18, he has presented no evidence that Palesh impeded him from performing his job because of his alleged whistleblowing activities. Thus, Han's argument is irrelevant as it has no bearing on whether Palesh would have terminated Han for a legitimate, independent reason even if he had not engaged in the protected activity.

Han additionally asserts that "at least one other teammate was not collaborating with him, thereby interfering with his ability to perform his job." Dkt. No. 85 at 19. But Han does not explain why the teammate was not collaborating with him, much less does he elucidate its relevance to Pfizer's decision to terminate Han. Han also points to the fact that he was nominated by a coworker for a performance award in November 2021. Dkt. No. 85 at 19. But the fact that one of Han's coworkers praised his performance does not create a material dispute of fact as to whether Pfizer was dissatisfied with Han's performance and would have fired him for that reason even if no whistleblowing conduct occurred. Indeed, the view of a single coworker in November

2021 is irrelevant to Pfizer's decision to terminate Han in November 2022.  Han further contends that the criticisms he received in 2020 were "constructive since he was relatively new to the department and getting used to the working styles of his teammates (font sizes, level of digital knowledge), whereas the criticisms he received were unwarranted and false."  Dkt. No. 85 at 19.  But an employee's personal judgment of their own competence does not create a genuine dispute of material fact for trial.  *See Schuler v. Chron. Broad. Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986) ("subjective personal judgments do not raise a genuine issue of material fact.").  Finally, Han points to the fact that there are no emails criticizing his performance between June 2020 and March 2022 to support his contention that he did not receive criticism during that time period. Dkt. No. 85 at 19.  The absence of emails criticizing Han's performance does not create a material dispute of fact – the undisputed evidence shows that Han received consistent criticism beginning in March 2020 and lasting until his termination.  *See, e.g.*, Dkt. No. 81 at 144, 149, 151, 156, 158-160, 178, 182-184, 186-187; Palesh Dep. 201:5-15.  Han provides no support for the assertion that criticism of his work need be in the form of an email.

The one case Han cites in support of his arguments does not persuade the Court to reach a different conclusion.  In *Tetrault v. Capital Group Companies*, the court held that the employer failed to show it would have terminated plaintiff absent the alleged protected activity because plaintiff's supervisor admitted that she "did not know" whether she would have terminated plaintiff absent his protected activity.  No. 2:23-CV-05144-WLH-JPR, 2025 WL 3153047, at *6 (C.D. Cal. Aug. 21, 2025).  No such admission exists here.  In contrast to *Tetrault*, Palesh testified affirmatively that she "made the decision to terminate Han's employment following a history of poor performance that did not improve with counseling and progressive discipline."  Palesh Dec. ¶ 7.

The uncontroverted material facts establish that Pfizer would have terminated Han for legitimate, independent reasons even if he had not engaged in the alleged whistleblowing activities.  Accordingly, Han's section 1102.5 claim fails.  *See Ververka v. Dep't of Veterans Affs.*, 102 Cal. App. 5th 162, 174 (2024).  Because the parties agree that Han's other claims depend on the success of his section 1102.5 claim, Dkt. No. 80 at 26; Dkt. No. 85 at 20, the Court need not

United States District Court
Northern District of California

14

consider the remainder of the parties' arguments to conclude that Pfizer's motion for summary judgment should be granted in its entirety.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Pfizer's motion for summary judgment. Pursuant to Federal Rule of Civil Procedure 58, the Court will separately enter judgment in this action.

**IT IS SO ORDERED.**

Dated: June 26, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**

United States District Court
Northern District of California